UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Sonya Taylor,** | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:23-cv-16968 |
| | ) | |
| **Allure of Galesburg, LLC,** an Illinois | ) | Jury Trial Demanded |
| Limited Liability Company, | ) | |
|     *Defendant.* | ) | |

## COMPLAINT

Plaintiff, Sonya Taylor, by and through her attorneys, complains of Defendant, Allure of Galesburg, LLC as follows.

### NATURE OF THE ACTION

1. Plaintiff brings this action against her former employer under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq*. ("ADA"), the Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq*. ("IHRA"), and the common law tort of retaliatory discharge. Plaintiff, a nurse at one of Defendant's healthcare facilities suffered a disabling workplace injury, requested, and was entitled to, a reasonable accommodation that would have allowed her to remain employed. Defendant wholly failed in its obligations to engage in the interactive process, discriminated against her by treating her disparately to non-disabled employees, refused her reasonable accommodation, pressured her to quit when it learned her disabling injuries were permanent, and ultimately terminated her employment, rather than grant her

1

accommodation, in response to her complaints, including a Workers' Compensation claim, when she refused to quit.

## JURISDICTION AND VENUE

2. Jurisdiction is provided by 28 U.S.C. §1331, as the claim involves violations of the ADA. The Court has supplemental jurisdiction for state law claims pursuant to 42 U.S.C. §1367(a).

3. Plaintiff has complied with all administrative prerequisites by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Illinois Department of Human Rights ("IDHR"), by receiving a Notice of Right to Sue from the EEOC on September 21, 2023, and by receiving a Notice of Right to Commence an Action from the IDHR on December 18, 2023.

4. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b)(1) and (d) because Defendant maintains its principal office within this judicial district.

## PARTIES

5. Plaintiff, Sonya Taylor, an individual, is a citizen of the State of Illinois and resident of Knox County who was formerly employed by Defendant.

6. Defendant, Allure of Galesburg, LLC (hereinafter sometimes referred to as "Allure"), is an Illinois limited liability corporation, registered with the Illinois Secretary of State with a Principal Office at 2711 W. Howard St., Chicago, Illinois.

Allure also operates the skilled nursing facility in Galesburg, Illinois, where Plaintiff worked.

7. Allure is part of Allure Healthcare Services, LLC, which owns and operates some eight different skilled nursing and healthcare facilities around the State of Illinois.

8. At all times relevant hereto, Defendant was a covered employer and Plaintiff was an employee for purposes of the ADA and IHRA.

## FACTUAL ALLEGATIONS

9. Plaintiff, a Licensed Practical Nurse ("LPN") began her employment at Defendant's Galesburg facility in January 2019, when she was hired as a full-time Floor Nurse.

10. Allure's facility in Galesburg is a healthcare center that offers therapy, social work, as well as general and skilled nursing to its residents.

11. As an LPN Floor Nurse, Plaintiff's primary duties included routine medication distribution to residents, charting residents' medical information, providing injections and breathing treatments, and occasionally providing wound care treatments.

12. Plaintiff's job did not regularly require her to lift patients. When lifting a patient became necessary, a number of Certified Nursing Assistants were available to perform the duty, and for whom lifting was a central part of their job.

13. On or around March 31, 2019, Plaintiff fell while walking on Defendant's premises and suffered a disabling injury. Plaintiff broke her leg and tore ligaments

3

in her knee and hip, all of which severely affected her ability to walk, stand, and lift.

14. Although, after an initial period of recovery, Plaintiff could have continued to perform her position as LPN Floor Nurse with accommodation, Defendant informed her it had a company policy prohibiting anyone with restrictions from working the floor with patients.

15. Defendant did not discuss with Plaintiff what accommodations would have allowed her to perform the essential duties of the LPN Floor Nurse role, nor did Defendant engage in any interactive process to explore reasonable accommodation.

16. Instead, Defendant told Plaintiff that she was no longer allowed to perform any LPN Floor Nurse functions and that she was not allowed to be near patients, suggesting that she might further injure herself.

17. Defendant reassigned Plaintiff to an open administrative position for which she was qualified. Her duties in this new role included filing medical records, organizing transport of patients, handling employee records, food delivery to patients, and performing other sedentary jobs as assigned.

18. Defendant later told Plaintiff she was no longer permitted to deliver food trays or to assist with patient transport, again, claiming that she might further injure herself.

19. Although Defendant instructed Plaintiff to perform only desk duties, other employees with non-disability related work restrictions were permitted to perform the tasks Defendant removed from Plaintiff and to work the floor with patients.

20. Plaintiff assumed the full-time duties of the administrative position handling medical records, patient appointments, and patient insurance issues; she would continue in that position, full-time, until her termination almost two years later.

21. The administrative position she was assigned performed duties that were necessary, vital aspects of patient care, which Defendant needed to have performed for its operations and which Defendant would have had to have another employee perform if Plaintiff not been reassigned to the position.

22. In June 2020, Plaintiff's doctors determined that she had reached maximum medical improvement and that the physical limitations from her injuries were permanent, as were her restrictions.

23. Plaintiff had previously filed a Workers' Compensation claim as a result of her workplace injury, which claim Defendant denied and continued to contest.

24. Again, Plaintiff explained to Defendant that she could perform the LPN Floor Nurse position with minor accommodation. Defendant refused to make any accommodation for her LPN position and refused to allow her to return to the floor.

25. Plaintiff complained that she was being treated differently than other non-disabled employees who had work restrictions but were permitted to continue in their jobs and work the floor. Plaintiff also complained that Defendant was retaliating against her for filing a Workers' Compensation claim and for requesting accommodations.

26. Defendant demoted Plaintiff from a full-time employee to a part-time

5

employee, and then used the change in status as an excuse to deny her the health insurance and other benefits she received as a full-time employee.

27. Defendant also improperly charged Plaintiff with approximately 50 hours of sick time after requiring her to miss two weeks of work due to possible exposure to the COVID-19 virus. Other non-disabled employees who missed work due to COVID-19 were not required to use sick time.

28. Additionally, Defendant removed Plaintiff's earned vacation and sick time without allowing her to use what she had already accrued, and Defendant refused to pay Plaintiff $2,200 in referral bonuses she had earned through a company program.

29. Plaintiff repeatedly complained internally about the loss of her benefits and full-time status and requested that they be reinstated. She further complained about Defendant's failure to pay her referral bonus wages that she had earned through a company program.

30. During this time, Plaintiff filed complaints with Illinois's Department of Labor as well as with the Employee Benefits Security Administration ("EBSA") in response to Defendant's retaliatory actions and in an effort to secure the full-time position and benefits she was entitled to.

31. In spite of the discrimination and retaliation she was forced to endure, Plaintiff continued to effectively perform the duties of her administrative position, without complaint.

32. In and around June and July of 2021, Defendant stopped contesting

Plaintiff's Workers' Compensation claim and accepted that her injuries and restrictions were permanent. Plaintiff's Workers' Compensation claim was thereafter closed.

33. Then, on July, 21, 2021, Plaintiff was called away from her work to the office of Mr. Brandt VanTine, Defendant's facility Administrator. She was met there by Mr. VanTine and Mr. Jeremy Goldberg, Allure's Chief Executive Officer.

34. In that meeting, Defendant presented Plaintiff with a typed "Separation and General Release" and told her to sign it.

35. Surprised, Plaintiff responded, "You're firing me?"

36. Defendant denied she was being fired and contended, rather, that they were offering her an opportunity to leave.

37. Plaintiff refused to sign the document, refused to quit, left the room, and returned to her work in the administrative position.

38. Approximately two weeks later, on August 5, 2021, Defendant's Administrator, Mr. VanTine, again called Plaintiff to his office, who was there with a Human Resources representative, Ms. Renee Ruberg.

39. Mr. VanTine immediately presented a termination letter to Plaintiff, which stated, "Allure of Galesburg will no longer be needing your services as of 8/10/21."

40. Defendant's letter claimed that the job Plaintiff had been performing for nearly two years was only "temporary," that it had just learned her disability restrictions were permanent, and that it would not employ her as an LPN Floor

7

Nurse.

41. Defendant further falsely stated that there were no non-nursing positions available for Plaintiff.

42. At no time in this meeting did Defendant discuss what accommodation Plaintiff needed to resume her role as a Floor Nurse, whether that accommodation was reasonable, whether it presented an undue hardship, what other positions Plaintiff could take on with her limitations (at Galesburg or any other facility), or whether she could continue performing the administrative duties she had been performing capably for the previous two years.

43. Plaintiff contended not only that she could continue in her administrative position but that she could perform the essential functions of an LPN Floor Nurse with reasonable accommodation, but Defendant refused to consider doing this since she had restrictions and needed accommodation, asserting "company policy" as the justification.

44. Defendant also claimed that the administrative position Plaintiff had been assigned and performing for two years was being eliminated and that all the duties would be reassigned to other employees.

45. Defendant's termination letter also referred Plaintiff back to the severance offer it had previously confronted her with and asked her to sign back in July. Plaintiff again refused to sign the document, and she was terminated from employment on August 9, 2021.

46. As a result of Defendant's unlawful conduct, Plaintiff has lost wages and

other benefits; incurred out-of-pocket medical expenses and/or increased insurance premiums; suffered financial hardship, emotional distress, embarrassment, suffering, and humiliation; and she has suffered damage to her career and reputation and loss of enjoyment of life.

## COUNT I
## THE AMERICANS WITH DISABILTIES ACT

47. Plaintiff realleges Paragraphs 1 through 46 and incorporates them as though fully set forth herein.

48. Title I of the Americans with Disabilities Act, specifically 42 U.S.C. §12101 *et seq.*, makes it unlawful to discriminate against an employee on the basis of an employee's disability, because of a record of disability, or because the employer regards the employee as suffering from a disability.

49. The Americans with Disabilities Act also makes it unlawful for an employer, an employee, or any agent of an employer to discriminate or retaliate against an employee because she has opposed any unlawful employment practice, and further makes it unlawful discrimination to fail to accommodate an employee's disability.

50. By its conduct as alleged herein, Defendant discriminated against Plaintiff because of her disability, because of her record of a disability, and/or because it regarded her as an individual with a disability, failed to accommodate Plaintiff's disability, failed to engage in an interactive process, and retaliated against Plaintiff for exercising her rights under the ADA.

51. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

52. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count I and that it:

a) Declare that Defendant's conduct was in violation of the Americans with Disabilities Act, as amended, and enjoin all officers, agents, employees, and all persons in active concert or participation with them from engaging in further unlawful conduct prohibited by the ADA;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them, to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

c) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Award Plaintiff punitive damages;

f) Award Plaintiff reasonable attorney's fees, costs, and disbursements; and

g) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT II
## THE ILLINOIS HUMAN RIGHTS ACT

53. Plaintiff realleges Paragraphs 1 through 46 and incorporates them as though fully set forth herein.

54. The Illinois Human Rights Act, 775 ILCS 5/1-101 *et seq.*, makes it unlawful to discriminate against an employee on the basis of an employee's disability and makes it unlawful to fail or refuse to accommodate an employee's disability.

55. By its conduct as alleged herein, Defendant discriminated against Plaintiff because of her disability, failed to reasonably accommodate her disability, failed to engage in an interactive process, and/or retaliated against Plaintiff for exercising her rights under the IHRA.

56. Defendant's conduct toward Plaintiff illustrates a willful and/or reckless disregard of Plaintiff's right to be free from impermissible disability discrimination.

57. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant on Count II and that it:

a) Declare that Defendant's conduct was in violation of the Illinois Human Rights Act, and enjoin all officers, agents, employees, and all persons in active concert or participation with them from engaging in further unlawful conduct prohibited by the IHRA;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them, to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent discrimination;

c) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all past and future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

d) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and which she will lose in the future, as a result of Defendant's unlawful conduct;

e) Award Plaintiff reasonable attorney's fees, costs, and disbursements;

11

and

f) Award Plaintiff any and all other relief as the Court deems just in the premises.

## COUNT III
### RETALIATORY DISCHARGE

55. Plaintiff realleges Paragraphs 1 through 46 and incorporates them as though fully set forth herein.

56. The State of Illinois has a clearly mandated public policy that prohibits any employer from engaging in any retaliatory or discriminatory conduct against an employee because of the exercise of rights under the Illinois Workers' Compensation Act.

57. Section 4(h) of the Illinois Workers' Compensation Act provides in part that: "It shall be unlawful for any employer … to discharge, to threaten to discharge, to refuse to rehire or recall to active service in a suitable capacity an employee because of his or her rights granted to him or her by [the Illinois Workers' Compensation Act]." 820 ILCS 305/4(h).

58. By its conduct as alleged herein, Defendant has violated the clearly mandated public policy of the State of Illinois by acting in retaliation for Plaintiff's exercise of rights under the Illinois Workers' Compensation Act.

59. Defendant's conduct toward Plaintiff illustrates a willful and reckless disregard of Plaintiff's rights to be free from unlawful retaliatory conduct.

60. As a result of Defendant's unlawful conduct, Plaintiff has suffered the damages alleged herein.

61. Plaintiff demands to exercise her right to a jury trial of this matter.

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against Defendant, on Count III and that it:

a) Declare that Defendant's actions constitute unlawful retaliatory discharge in violation of public policy;

b) Enjoin Defendant and all officers, agents, employees, and all persons in active concert or participation with them, to institute and carry out all policies and practices to provide equal employment opportunities for all and to prevent unlawful retaliation;

c) Award Plaintiff the value of all lost compensation and benefits as a result of Defendant's unlawful conduct;

d) Award Plaintiff any applicable compensatory damages, including but not limited to the value of all future lost compensation and benefits as a result of Defendant's unlawful conduct, as well as for emotional distress;

e) Award Plaintiff pre-judgment interest and additional damages to offset the tax liability on the value of compensation and benefits lost, and those which she will lose in the future, as a result of Defendant's unlawful conduct;

f) Award Plaintiff punitive damages; and

g) Award Plaintiff any and all other relief as the Court deems just in the premises.

Respectfully submitted,

/s/ Alexandra L. Raynor
Attorney for the Plaintiff

John P. Madden
Alexandra L. Raynor
O'Malley & Madden, P.C.
542 So. Dearborn Street, Suite 660
Chicago, Illinois 60605
(312) 697-1382
ARDC No. 6342688
alex.raynor@ompc-law.com